IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 11, 2005 Session

# LASCHINSKI T. EMERSON v. OAK RIDGE RESEARCH, INC., a/k/a OAK RIDGE REALTY HOLDING, INC., and NATHANIEL REVIS

**Direct Appeal from the Circuit Court for Anderson County**
**No. 98LA0497     Hon. James B. Scott, Jr., Circuit Judge**

---

**No. E2004-01974-COA-R3-CV  - FILED OCTOBER 5, 2005**

---

Plaintiff sued defendants for sexual harassment, assault and battery and retaliatory discharge.  A jury returned a verdict for various damages, as well as punitive damages. The Trial Judge, acting as 13th juror, essentially approved the jury's verdict, but reduced the punitive damages from $500,000.00 to $150,000.00, and awarded plaintiff attorney's fees in the amount of $282,964.50, as well as discretionary costs.  On appeal, we affirm in part, vacate in part and remand with instructions.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Vacated in part, and Remanded.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which SHARON G. LEE, J., joined, and D. MICHAEL SWINEY, J., filed a separate Opinion, concurring in part and dissenting in part.

Stephen G. Anderson, Knoxville, Tennessee, and
Lyle Reid, Covington, Tennessee, for appellants.

Katherine A. Young, Dale J. Montpelier, and Kevin B. Fox, Knoxville, Tennessee, and
April Carroll Meldrum, Clinton, Tennessee, for appellee.

## OPINION

### Background

Plaintiff's Complaint alleged that she had been damaged by the actions of the

defendants, Oak Ridge Research, Inc. a/k/a Oak Ridge Realty Holding, Inc, ("ORRI"), and Nathaniel Revis. She alleged that Revis sexually harassed her and created a hostile working environment, including unwelcome sexual comments and unwelcome physical touching. Further that Revis promised her job benefits and favors if she would submit to a sexual relationship with him.

Plaintiff alleged that an attorney acting on her behalf sent a letter to Revis complaining of such conduct, and that Revis immediately began to retaliate against her in the work place, and that she was terminated from her job on April 3, 1998. She also alleged the company was an alter ego of Revis and that Revis completely controlled the company, such that the corporate veil should be pierced and Revis should be held personally liable for any acts attributed to the corporation. Further, that Revis made fun of her religious beliefs, and thus violated the Tennessee Human Rights Act, and that the corporation was liable for retaliatory discharge, in that plaintiff was dismissed for refusing to remain silent about such behavior.

She alleged that Revis was liable for slander and assault and battery, and sought compensatory and consequential, as well as punitive damages, plus attorney's fees.

Defendants Answered, denying liability, and sought Summary Judgment. At that juncture, plaintiff filed a Motion to Amend Complaint, seeking to add a claim under Title VII, and also seeking to add a claim for attorney's fees under the Tennessee Whistleblower Statute. The Court overruled the Motion to Amend, and ruled that defendants should be granted summary judgment on plaintiff's THRA claims, because the company did not have a sufficient number of employees during the time of plaintiff's employment.

Plaintiff filed a Second Motion to Amend Complaint, to add a claim of common law retaliatory discharge, which the Court granted and overruled the remaining issues raised in defendants' Motion for Summary Judgment. Plaintiff dismissed her slander claim.

The trial before a jury lasted several days, with numerous witnesses testifying. Following closing arguments, the jury returned a verdict, finding that Revis made "an intentional attempt and unmistakable overt act coupled with the present ability to cause the plaintiff, Mrs. Emerson to reasonably believe that she was within the realm of harm or danger". The jury found that Revis' actions caused plaintiff harm, and that plaintiff suffered damages of $6,000.00. The jury further found that Revis made "bodily contact with plaintiff that was either unpermitted or harmful or offensive", that his actions caused her harm, and that she suffered damages of $12,000.00.

Regarding retaliatory discharge, the jury found plaintiff was employed by ORRI, and that she was terminated because she refused to remain silent about conduct that she had reasonable cause to believe violated a criminal or civil law. The jury found that ORRI's actions caused plaintiff embarrassment, humiliation, shame, or financial loss, and that plaintiff should be awarded $2,000.00 for her claims of embarrassment, humiliation, and shame. Further, the jury found plaintiff should be awarded $138,000.00 in back pay, and $13,800.00 in lost benefits from ORRI. Finally, the jury found that punitive damages were appropriate, by clear and convincing evidence.

The trial then proceeded on the issue of punitive damages. Following a presentation of the evidence, the jury further deliberated and returned a verdict awarding plaintiff punitive damages of $500,000.00. The court entered a Final Judgment, incorporating the jury's verdict, and reserved the issue of attorney's fees and discretionary costs.

Defendant Revis filed a Post-Judgment Motion, seeking a new trial and remittitur of the verdict. Defendant ORRI also filed Post-Judgment Motions for new trial, directed verdict, and remittitur. Other post-trial motions were filed, including motions regarding attorney's fees, discretionary costs, front pay, and an award to remedy adverse tax consequences. Acting on these Motions, the Court entered a Judgment and Order denying all Post-Trial Motions, except that the Court granted a remittitur of the punitive damages, reducing same from $500,000.00 to $150,000.00, and further found the evidence preponderated in favor of the jury's verdict otherwise. The Court granted plaintiff's attorney's fees of $282,964.50, post-judgment interest, and discretionary costs of $12,000.00.

## Issues on Appeal

The issues presented on appeal by all parties are numerous:

1.     Does plaintiff's hiring of a lawyer and having him privately confront her alleged harassment advance "some important public policy interest embodied in the law" so as to constitute protected whistleblower activity under the Whistleblower Act, Tenn. Code Ann. §50-1-304?

2.     Does the discharge of an employee for complaining about unwelcome physical contact contravene a clear mandate of public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision which defendant violated?

3.     Was there any evidence to support the jury's finding that the defendant's reason for discharging plaintiff was pretextual?

4.     May two defendants who are found liable for different torts, and therefore cannot be joint tortfeasors, be held jointly and severally liable for punitive damages?

5.     Are the $500,000 in punitive damages awarded in this case lawful either in amount or in the procedure by which they were determined, and if not, are they salvaged by the trial court remitting them to $150,000?

6.     Did the prejudicial errors committed by the trial court in the admission and exclusion of evidence more likely than not affect the outcome of the trial such that defendants are entitled to a new trial?

-3-

7.      Is the 2000 amendment to the Whistleblower Act retroactive so as to subject plaintiff's employer to an award of attorney's fees on a cause of action that accrued in 1998, and if so, is there any basis on which the individual defendant could properly have been held liable for plaintiff's attorneys fees?

8.      Did the trial court err in suggesting a remittitur of punitive damages, or should the $500,000 award be reinstated?

9.      Did the trial court err in refusing to award additional damages to plaintiff to compensate her for the adverse tax consequences that resulted from her unlawful termination and subsequent lump sum back pay award?

10.     Did the trial court err in failing to make plaintiff whole by an award of front pay, since reinstatement is not a feasible remedy?

11.     If defendants prevail in their bid for a new trial, plaintiff asserts that it was error for the trial court to grant summary judgment on plaintiff's THRA claim, and seeks to have said claim reinstated.

12.     If the award of attorney's fees does not stand under the Tennessee Public Protection Act, plaintiff seeks an award of attorney's fees under the THRA.

13.     If a new trial is granted, plaintiff asserts that she is entitled to have the jury instructed that her reasonable belief as to illegality is a proper basis for a retaliatory discharge claim.

14.     If a new trial is granted, plaintiff asserts that she should not be required to have the jury find that assault and battery occurred as a condition precedent to a finding of retaliatory discharge.

15.     If a new trial is granted, plaintiff asserts that she is entitled to full discovery regarding defendant ORRI's financial condition, if defendant uses its financial condition as an alleged legitimate non-discriminatory basis for plaintiff's termination.

16.     If a new trial is granted, plaintiff asserts that the defendants should be required to provide full discovery regarding their current financial condition for use in the punitive damages phase of the new trial.

**Discussion**

The first three issues raised by defendants are essentially whether the proof was sufficient to show retaliatory discharge/protected whistleblower activity, and/or whether there was

-4-

evidence to support the jury's finding that the reason given for the plaintiff's termination was pretextual. Plaintiff's response is that these issues were not substantively raised in the Motions for New Trial filed by defendants. The issue that was raised post-trial was whether the Trial Court should have granted defendants summary judgment or directed verdict on these issues. Thus, that is the only framework for this Court's analysis. Tenn. R. App. P. 3(e).

Denial of summary judgments are generally not reversible on appeal. *Bradford v. City of Clarksville*, 885 S.W.2d 78 (Tenn. Ct. App. 1994).

The standard of review for a denial of directed verdict is as follows:

A directed verdict is appropriate only when the evidence is susceptible to but one conclusion. We must "take the strongest legitimate view of the evidence favoring the opponent of the motion when called upon to determine whether a trial court should have granted a directed verdict." In addition, all reasonable inferences in favor of the opponent of the motion must be allowed and all evidence contrary to the opponent's position must be disregarded.

As this Court has stated: "The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence."

*Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000)(citations omitted).

In this case, taking the strongest legitimate view of the evidence in plaintiff's favor, it is clear that the Trial Court properly denied the Motions. As the Supreme Court has previously explained:

Where, as here, the claim is one alleging retaliatory discharge and the essential factor to be determined is the employer's motivation, direct evidence of that motivation is rarely within the plaintiff's possession. Consequently, the reviewing court must make a determination of whether the "proffered admissible evidence shows circumstances that would be sufficient to permit a rational trier of fact to infer a [retaliatory] motive. It is not the province of the summary judgment court itself to decide what inferences should be drawn." The evidence of causation must be viewed in a light most favorable to the nonmoving party and all reasonable inferences must be made in that party's favor. The burden of proof rests upon the plaintiff to prove a causal relationship between the plaintiff's whistleblowing activity and the termination of employment. If the plaintiff is able to demonstrate this causal link, the employer then bears the burden of showing a "legitimate, non-pretextual reason for the employee's discharge."

*Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002)(citations omitted).

In *Guy*, the Supreme Court determined that the Whistleblower statute did not preempt a common law claim of retaliatory discharge. The Court further explained that either cause of action basically requires a showing that an employee was discharged for refusing to remain silent about illegal activities, and that the employer's violation was the sole or a "substantial factor in the employee's discharge." *Id*. In this case, plaintiff testified that she was the victim of sexual harassment and assault/battery by Revis over a period of months, that she complained of said conduct to Revis and others, and that she was discharged shortly thereafter. The evidence of the behavior by Revis as testified to by the plaintiff, would be considered illegal and against public policy, as the State has enacted specific statutes dealing with harassment and assault and battery. However, defendants argue that plaintiff's reporting of said behavior was not sufficient because it was not reported to "authorities" or some outside entity.

Defendants rely on the unreported decision of *Merryman v. Central Parking System, Inc.*, 1992 WL 330404 (Tenn. Ct. App. Nov. 13, 1992),[1] for the assertion that simply reporting to a supervisor is not sufficient to qualify one as a "whistleblower". We believe *Merryman* actually supports the plaintiff's position, since this Court explicitly rejected the idea that "an employee's actions in reporting illegal activities to a person within the employment setting, instead of an outside entity, are merely private or proprietary, and thus do not promote public safety and welfare." *Id.* Rather, this Court adopted the reasoning that reporting a serious infraction of the law to either company management or law enforcement officials would qualify. *Id.*[2]

Regarding the legitimate reason advanced by defendants for discharging plaintiff, i.e. financial difficulties, plaintiff testified that this reason was pretextual, as shown by the close proximity in time between her complaint and her termination, the fact that her job performance was never questioned (as evidenced by Revis' and Osborne's statements that plaintiff was a good employee), the fact that she was offered a raise shortly before her termination, the fact that staff was later expanded, etc. Thus, plaintiff submitted material evidence from which the jury could find that the proffered reason was pretext.

Taking the strongest legitimate view of the evidence favoring plaintiff, allowing all reasonable inferences in favor of plaintiff, and disregarding all evidence contrary to plaintiff's position, it is clear that genuine issues existed, and reasonable minds could differ as to the conclusions to be drawn from the evidence. Thus, the Trial Court properly denied defendants'

---

[1]In *Merryman*, this Court ruled that simply reporting the behavior to the offending supervisor himself instead of reporting it to company management would not qualify the plaintiff as a whistleblower. *Id.* In the case at bar, however, plaintiff reported to both the offending supervisor and company management when she reported to Revis, as he served in both capacities. Thus, *Merryman* is factually distinguishable.

[2]In this case, plaintiff reported Revis' conduct to an "outside entity". Revis testified he overheard a phone call plaintiff made to the Knoxville Bar Association wherein she told them she was looking for an attorney because her boss was sexually harassing her.

motions for directed verdicts.

Defendants argue that the single award of punitive damages against both defendants is "void because it is contrary to the basic legal principle, 'to hold one responsible for damage suffered by another, his act or admission must have been a 'substantial factor' in producing the damage'". This argument ignores the fact that Revis was 100% owner of the corporation, and according to the evidence he was the only person who acted for the corporation in causing the damage. It also ignores the fact that the defendants acquiesced to the format of the jury verdict form which they now complain. Defendants cannot complain about an alleged error which they took no steps to correct in the trial court. Tenn. R. App. P. Rule 36.

Defendants also argue that the punitive damage award is void because there was no allocation of fault between the two defendants. Once again, the defendants will not be allowed to complain that fault was not apportioned when they did not ask for it to be done at trial. Also, the cases which defendants rely upon for this assertion make clear that when an act is committed by two parties jointly, in concert, or in the pursuit of a common purpose, they are jointly and severally liable. This is the precise situation here.[3] We find defendants' arguments regarding joint and several liability to be without merit.

Next, defendants argue that punitive damages were not warranted in this case, because there was no evidence of fraud, malice, bad motive, recklessness, etc., and that the amount, even after remittitur, is excessive. Plaintiff, on the other hand, argues that the original award of $500,000.00 should be reinstated.

As the Supreme Court has previously stated, "In this state, the theory of punitive damages is not to compensate an injured plaintiff for personal injury or property damage, but to punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him." *Huckeby v. Spangler*, 563 S.W.2d 555, 558 (Tenn. 1978). "In Tennessee, therefore, a court may henceforth award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). As the Court explained:

> Further, because punitive damages are to be awarded only in the most egregious of cases, a plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence. This higher standard of proof is appropriate given the twin purposes of punishment and deterrence: fairness requires that a defendant's wrong be clearly established before punishment, as such, is imposed; awarding punitive damages only in clearly appropriate cases better effects deterrence.

---

[3] In fact, there is authority in this state which allows a joint punitive damage award in such a situation. *See Odom v. Gray*, 508 S.W.2d 526 (Tenn. 1974).

*Id.* In this case, the jury found that defendants acted intentionally, and that there was clear and convincing evidence to support an award of punitive damages. The evidence in the record supports these findings.

The Court went on to explain the proper procedure for a trial court to follow when faced with a question of punitive damages:

> In a trial where punitive damages are sought, the court, upon motion of defendant, shall bifurcate the trial. During the first phase, the factfinder shall determine (1) liability for, and the amount of, compensatory damages and (2) liability for punitive damages in accordance with the standards announced above. During this phase, evidence of a defendant's financial affairs, financial condition, or net worth is not admissible.
>
> If the factfinder finds a defendant liable for punitive damages, the amount of such damages shall then be determined in an immediate, separate proceeding. During this second phase, the factfinder shall consider, to the extent relevant, at least the following:
>
> (1) The defendant's financial affairs, financial condition, and net worth;
>
> (2) The nature and reprehensibility of defendant's wrongdoing, for example
>
> > (A) The impact of defendant's conduct on the plaintiff, or
> >
> > (B) The relationship of defendant to plaintiff;
>
> (3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;
>
> (4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;
>
> (5) The expense plaintiff has borne in the attempt to recover the losses;
>
> (6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;
>
> (7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;
>
> (8) Whether, once the misconduct became known to defendant, defendant took

remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused;  and

(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

*Id.* at 901-901.

As the Supreme Court has instructed "After a jury has made an award of punitive damages, the trial judge shall review the award, giving consideration to all matters on which the jury is required to be instructed. *The judge shall clearly set forth the reasons for decreasing or approving all punitive awards in findings of fact and conclusions of law demonstrating a consideration of all factors on which the jury is instructed.*" *Hodges*, 833 S.W.2d at 902. (Emphasis supplied).  We have reviewed the transcript of the Trial Court's detailing and findings/conclusions, and the Trial Court did not make sufficient fact findings and conclusions of law to demonstrate the correctness of his award, but seemed to concentrate mainly on the factor dealing with the nature and reprehensibility of the defendant's wrongdoing.  As the Supreme Court has stated:

> In order to "clearly demonstrate a consideration of all relevant factors," the court's findings of fact and conclusions of law should explicitly refer to each of the factors listed in *Hodges*, as well as to any other factors supporting the award of punitive damages.  *Id.* (stating, "the factfinder shall consider, to the extent relevant, at least the following . . . [listing the nine factors].") (emphasis added).  *See Coffey*, 929 S.W.2d at 329-30 (quoting the trial court's extensive findings of fact and conclusions of law as to each individual factor listed in *Hodges*).  The trial court's findings of fact and conclusions of law in the pending case did not address each of the *Hodges* factors individually and are therefore insufficient.  We therefore reverse the award of punitive damages and remand this case to the trial court.  On remand, the trial court will apply the factors outlined in *Hodges* and will make appropriate findings of fact and conclusions of law in arriving at an award of punitive damages.

*Culbreath v. First Tennessee Bank Nat. Ass'n.*, 44 S.W.3d 518, 529 (Tenn. 2001).  If the trial court fails to make such findings, then the appropriate course of action for this Court is to remand.  *Id. See also Fred Simmons Trucking, Inc., v. U.S. Fidelity and Guar. Co.*, 2004 WL 2709262 (Tenn. Ct. App. Nov. 29, 2004); *Kimery v. Unicoi Co. Ins. Agency*, 2003 WL 21297314 (Tenn. Ct. App. June 2, 2004).  Since the Trial Court failed to make such findings and did not conduct the proper analysis in this case, the issue of punitive damages is remanded and the Trial Court is directed to comply with the requirements of *Hodges* and *Culbreath*.

The defendants argue that the Trial Court committed such prejudicial errors regarding the admissibility of evidence that they are entitled to a new trial.  Specifically, defendants argue that it was improper for plaintiff's counsel to question Tanya Osborne about a child she had out of wedlock with Revis (during the time he was married to another), for plaintiff's counsel to question

Kevin Jeske about whether he told Revis in the past that an employee/employees had complained of Revis sexually harassing them, that there was improper use of prior inconsistent statements (of Ramona Williams), and that it was error to exclude excerpts of plaintiff's deposition from being read into the record.

Defendants concede that Tenn. R. App. P. 36(b) controls, which provides that a judgment shall not be set aside unless "error involving a substantial rights more probably than not affected the judgment or would result in prejudices to the judicial process". We conclude that such is not the case here.

Defendants argue, for example, that testimony elicited from Ms. Osborne regarding the paternity of her son was to show some type of "prior bad act" of Revis. The testimony actually showed, however, that there was potential bias on Ms. Osborne's part due to the fact that she had a personal relationship with Revis and they had a child together. Evidence of bias and/or prejudice is admissible pursuant to Tenn. R. Evid. 616.

Regarding the testimony of Jeske, the jury was only allowed to hear that he reported to Revis in the past that other female employees had complained that Revis sexually harassed them. Revis had previously testified that he had never been accused of anything, and thus, the limited testimony of Jeske was utilized to impeach Revis' credibility, which was proper under the Rules of Evidence.

Defendants also argue that the prior statement of witness Ramona Williams was used improperly because plaintiff's counsel questioned Williams about statements she allegedly made to plaintiff in a telephone conversation. During this questioning, however, plaintiff's counsel simply asked Williams a litany of questions such as "do you recall telling Ms. Emerson . . ." and Williams denied or said she did not recall any of those statements. Without utilizing or referring to a statement or transcript, there is no way to demonstrate that this is improper use of a prior statement, because there was no prior statement utilized.

Finally, defendants argue that it was error for the Court to refuse to allow them to read excerpts from plaintiff's deposition regarding the "bottom touching" incident. Defendants impeached plaintiff with her deposition regarding this event, and she was questioned about it more than once during the trial.

Defendants have failed to show that any of these purported errors in the admission/exclusion of evidence involved substantial rights, that more probably than not affected the judgment, or would result in prejudices to the judicial process. We find no basis on the foregoing to grant defendants a new trial.

Defendants argue that the award of attorney's fees was not proper in this case, because there was no statutory basis for such an award, since the attorney's fee provision was not added to the Whistleblower statute until 2000, and this action was filed in 1998. Plaintiff argues that

such an award was warranted under the amended version of the Whistleblower statute, because fees were demanded in the original Complaint, no vested right was affected, and the case was pending at the time of the amendment.

The parties agree that the Whistleblower statute, Tenn. Code Ann. §50-1-304, added a provision allowing attorney's fees for a prevailing party in a retaliatory discharge action in 2000, and that no such provision existed prior to that time. As our Supreme Court has previously explained:

> Under the Tennessee Constitution, "no retrospective law, or law impairing the obligations of contracts, shall be made." Tenn. Const. art. 1, § 20. Accordingly, statutes are presumed to operate prospectively unless the legislature clearly indicates otherwise. *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn.1998). It has been noted, however, that certain statutes may be retroactive:

> Statutes deemed remedial or procedural apply retrospectively to causes of action arising before such acts became law and to suits pending when the legislation took effect.

> A procedural or remedial statute is one that does not affect the vested rights or liabilities of the parties. A procedural statute is one that addresses the mode or proceeding by which a legal right is enforced. Remedial statutes are defined as "legislation providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained...."

> *Id.* (quoting *State Dep't of Human Servs. v. Defriece*, 937 S.W.2d 954, 958 (Tenn. Ct. App.1996)); *see also Kuykendall v. Wheeler*, 890 S.W.2d 785, 787 (Tenn.1994). The eighth edition of Black's Law Dictionary further defines "remedial law" as legislation "passed to correct or modify an existing law" and as "a law that gives a party a new or different remedy when the existing remedy, if any, is inadequate." However, "even a procedural or remedial statute may not be applied retrospectively if it impairs a vested right or contractual obligation in violation of [Tennessee Constitution] article I, section 20." *Doe v. Sundquist*, 2 S.W.3d 919, 923-24 (Tenn.1999). A "vested right" is defined as a right which "is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice." *Id.* at 923 (quoting *Morris v. Gross*, 572 S.W.2d 902, 905 (Tenn.1978)).

> * * *

> We have enumerated some of the factors helpful in determining whether application of a new law will "impair" an existing vested right.

-11-

"[I]n determining whether a retroactive statute impairs or destroys vested rights, the most important inquiries are (1) whether the public interest is advanced or retarded, (2) whether the retroactive provision gives effect to or defeats the bona fide intentions or reasonable expectations of affected persons ... (3) whether the statute surprises persons who have long relied on a contrary state of the law." *Ficarra v. Dep't Regulatory Agencies*, 849 P.2d 6, 16 (Colo.1993). We add to these factors ... an additional factor discussed above: the extent to which a statute appears to be procedural or remedial.

*Sundquist*, 2 S.W.3d at 924. Another clearly important factor is whether application of the new law results in the loss of a fundamental right.

*In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004).

Thus, we must determine whether the amendment was merely remedial/procedural, and does not impair vested rights. The types of statutes that have been found to be remedial/procedural have included statutes affecting venue/jurisdiction, or service of process. *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976); *Burton v. Borden Foods Co.*, 494 S.W.2d 775, 777 (Tenn. 1972); *Morford v. Yong Kyun Cho*, 732 S.W.2d 617, 620 (Tenn. Ct. App. 1987).

In a case, however, dealing with a statutory amendment which added a provision for attorney's fees where none previously existed, the Court ruled that such an amendment added "a new and different measure of damages than was previously allowed, viz., attorney fees" and thus was not remedial and could not be retroactively applied. *Anderson v. Memphis Housing Authority*, 534 S.W.2d 125, 128 (Tenn. Ct. App. 1975).

Similarly, here, the 2000 amendment added a provision allowing attorney's fees which did not exist before, and thus created a new measure of damages for such claims that had been allowed prior to the amendment. On the above authority, we hold the Trial Court erred in applying this amendment retroactively to allow attorney's fees in this case.

Plaintiff argues the fee award should stand pursuant to the fee provision in the Tennessee Human Rights Act, asserting that her THRA claim was erroneously dismissed by the Trial Court. The Trial Court ruled, however, that the THRA would not apply in this case because ORRI did not fit within the statute's definition of an employer, because it did not employ eight or more persons. *See* Tenn. Code Ann. § 4-21-102. While it is true that only an "employer" can be liable for sexual harassment pursuant to the THRA (*see* Tenn. Code Ann. § 4-21-401), a person, which is defined as "individuals, governments, governmental agencies, public authorities, labor organizations, corporations, legal representatives, partnerships, associations", can be liable for retaliating or discriminating "in any manner against a person because such person has opposed a practice declared discriminatory by this chapter or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter". *See* Tenn. Code Ann. §§ 4-21-102 and 301. Plaintiff made a claim of such retaliation pursuant to

Tenn. Code Ann. § 4-21-301 in her Amended Complaint, and both Revis and ORRI are persons pursuant to Tenn. Code Ann. §4-21-102.

This Court and our Supreme Court have previously held that an individual can be held liable pursuant to Tenn. Code Ann. §4-21-301. In *Carr v. United Parcel Service*, 955 S.W.2d 832 (Tenn. 1997), the Supreme Court stated:

Moreover, the THRA provides that:

[i]t is a discriminatory practice for a person or for two (2) or more persons to:

. . . . .

(2) Aid, abet, incite, compel or command a person to engage in any of the acts or practices declared discriminatory by this chapter;

Tenn.Code Ann. § 4-21-301(2) (1991 Repl.). A "person" is defined as "one (1) or more individuals, governments, governmental agencies, public authorities, labor organizations, corporations, legal representatives, partnerships, associations,.. unincorporated organizations or other organized persons." Tenn.Code Ann. § 4-21-102(14). Accordingly, we find that an individual who aids, abets, incites, compels, or commands an employer to engage in employment-related discrimination has violated the THRA.

*Id.* at 836. This holding was followed by this Court in *Harris v. Dalton*, 2001 WL 422964 (Tenn. Ct. App. April 26, 2001), wherein the trial court decision granting JNOV to an individual was reversed where the trial court held the person could not be found guilty to have accomplice liability under Tenn. Code Ann. §4-21-301. In this case the allegation is retaliation rather than aiding and abetting, both of which practices fall under Tenn. Code Ann. §4-21-301, so individual liability may be had for either violation. *See also Harbison v. Crockett County*, 2003 WL 1743638 (W. D. Tenn. March 28, 2003).[4]

In sum, the THRA is a remedial statutory scheme, and we are required to give a liberal construction to further its intent. While the legislature arbitrarily decided that sexual harassment would not be actionable against the employer unless there were eight or more employees, the legislature created an independent cause of action in favor of any employee who is retaliated against for reporting any acts or practices declared discriminatory, and also protects the individual

---

[4] The opinion of this Court in *Kilgore v. Garner*, 1996 WL 469693 (Tenn. Ct. App. Aug. 20, 1996), is not applicable to this case because it was decided prior to the Supreme Court's opinion in *Carr*, and thus fails to recognize that individual liability can attach under the statute for retaliation and or aiding and abetting, pursuant to the plain language of Tenn. Code Ann. §§4-21-102 and 301.

employee from individuals who aids, abets, and otherwise commands an employer to engage in employment-related discrimination, whether or not such employer has eight or more employees. To read the Act otherwise, would give "persons" in any organization which employs less than eight employees free rein to engage in discriminatory practices which the Act condemns.

In the Judgment which finally granted summary judgment on "that part of the plaintiff's Complaint seeking remedies pursuant to the Tennessee Human Rights Act., T.C.A. § 4-21-101 *et seq*.," the Court simply found that there was no genuine issue of material fact with respect to the number of persons employed by ORRI at the critical time, which the Court found to be less than eight. The Court did not discuss the fact that a claim of retaliation or discrimination pursuant to Tenn. Code Ann. § 4-21-301 did not have any such requirement. Thus, the Trial Court erroneously dismissed this claim under the THRA. Since the jury clearly found that plaintiff was retaliated against for complaining about sexual harassment, the fee award would be proper pursuant to the retaliation liability provided by the THRA for Revis/ORRI as "persons", as the THRA expressly allows for a fee award as a remedy. Tenn. Code Ann. § 4-21-306. Thus, the fee award would be proper by the application of these THRA provisions, *also see* Tenn. Code Ann. § 4-21-311, and the familiar rule is applicable that if the Trial Court reaches the correct result for the wrong reasons, such Judgment will not be overturned.

Plaintiff asserts that she should have been granted an additional award of front pay by the Court, as well as an award to offset any tax consequences related to the lump sum back pay award. Front pay has been defined as "a monetary award intended to compensate the plaintiff for the loss of future earnings" and described as "inherently speculative" due to its prospective nature. *Coffey v. Fayette Tubular Products*, 929 S.W.2d 326, 332 (Tenn. 1996). Moreover, front pay is only appropriate where reinstatement is not feasible. In order to limit the speculative nature of front pay, this Court has applied the following factors, which were set forth in *Sasser v. Averitt Express, Inc.*, 839 S.W.2d 422, 433 (Tenn. Ct. App.1992):

> (1) the employee's future in his or her old job [meaning an estimation of what the employee could have earned in the old job if the discharge had not taken place]; (2) the employee's work and life expectancy;
>
> (3) the employee's obligation to mitigate his or her damages;
>
> (4) the availability of comparable employment opportunities and the time reasonably required to find another job.[5]

Our opinion in *Sasser* also states that determining the amount of front pay damages "requires the calm and deliberate balancing of many factors. It is sufficiently intricate and complex

---

[5] The Supreme Court's opinion in *Coffey* removed any consideration to the punitive damage award when determining at an award of front pay. *See Coffey*, at 333.

that it requires a decision by the court rather than submission to the jury." *Id*. at 435.

The Court stated that "In cases where both equitable and legal remedies are demanded, the court should first submit the case to the jury to resolve liability, legal damages, and all material factual disputes. Thereafter, the court should itself resolve the issues involving equitable relief." *Id.* In *Sasser*, the Court affirmed the jury's finding of retaliatory discharge, and remanded for a damage determination with the following instructions:

> Following the jury's determination of the amount of punitive damages, or if the jury determines that Averitt should not be required by pay punitive damages, the trial court should also decide whether reinstatement is feasible in light of all the facts. If reinstatement is feasible, then the court should order Averitt to reinstate Mr. Sasser under whatever conditions it deems proper. If reinstatement is not feasible, the trial court should decide whether Mr. Sasser is entitled to front pay and, if so, the amount.

*Id.* at 436.

In this case, the jury resolved the factual issues and determined compensatory and punitive damages. In accordance with *Sasser,* plaintiff then asked the Trial Court to determine that reinstatement was not feasible and award front pay.

In ruling on the plaintiff's motion, the Court stated, "Front pay in this case I believe to be that which the jury somewhat entertained in the way of trying to see that she, Ms. Emerson, was compensated for that which was a part of her income that she would have received in the normal course of her employment. And I do believe that the charge that I gave that jury to be a proper charge." The Judge went on to say that he simply felt "uncomfortable" awarding anything beyond the jury's verdict.

In the charge to the jury, however, the court simply instructed that the jury could award economic damages "including that income from the date of the wrongful termination to the reasonable time proven that she was not employed at an income commensurate with that income at the time of her wrongful termination", and went on to state that the harm should be "reasonably certain" and not speculative. The jury was not specifically instructed regarding front pay, and this was correct pursuant to the procedure outlined in *Sasser*. The Court should not, however, have based his ruling on this issue on the fact that the jury had already determined damages, because front pay is an equitable remedy within the province of the court's decision-making authority, and not to be submitted to the jury (which it clearly was not in this case). *See Sasser*.

While we have been cited no authority on proper standard of review for a denial of front pay, an award of front pay would appear to be a matter of discretion with the Trial Court, and thus should be reviewed under an abuse of discretion standard. As the Supreme Court has held, a trial court abuses its discretion "only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'"

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)(citation omitted). The Trial Court in this situation applied an incorrect standard when stating that this decision was within the province of the jury, since same was not and should not have been submitted to the jury, and thus accordingly, we remand this issue to the Trial Court for reconsideration, pursuant to the factors enumerated in *Sasser*.

As to the additional award sought by the plaintiff in consideration of the tax consequences of her lump sum back pay award, the Court stated "I just feel uncomfortable awarding front pay as well as that which you consider to be an adjustment for the tax consequences of the judgment that she received. So that is not available to you." Plaintiff argued that she should be compensated for the additional tax burden of some $35,000.00 that she would incur due to the fact that she received this award in lump sum, rather than receiving wages paid over a period of years. Plaintiff does not point to any case law from this State, however, which would provide for such redress, and she fails to recognize that such tax consequences could have been brought to the jury's attention by way of proper evidence and instruction. As the defendants point out, we cannot be sure that the jury did not take tax consequences into account in making its award. The plaintiff failed to take reasonable action to avoid the effect of this purported error, and cannot get relief from this Court. Tenn. R. App. P. Rule 36.

The remaining issues raised by the plaintiff were premised on this Court's grant of a new trial to defendants, and since such relief was not granted, are considered moot.

The Judgment of the Trial Court is affirmed in part, vacated in part, and the cause remanded, with the cost of the appeal assessed one-half to plaintiff, Laschinski T. Emerson, and one-half to defendants, Oak Ridge Research, Inc., and Nathaniel Revis.

_____
HERSCHEL PICKENS FRANKS, P.J.

-16-