# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 5, 2014 Session

## CHARLES HAYNES v. FORMAC STABLES, INC.

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Obion County**
**No. CC10CV204      William B. Acree, Judge**

---

**No. W2013-00535-SC-R11-CV - Filed March 27, 2015**

---

The plaintiff asserted claims for retaliatory discharge pursuant to both the common law and the Tennessee Public Protection Act, alleging that the owner of the employer had engaged in illegal conduct and had terminated the plaintiff's employment when he acted as a whistleblower by complaining of the conduct to the owner. The trial court dismissed the plaintiff's claims because, according to his own allegations, he had not reported the illegal activity to anyone other than the person responsible for the activity. The Court of Appeals affirmed. We hold that an employee must report an employer's wrongdoing to someone other than the wrongdoer to qualify as a whistleblower, which may require reporting to an outside entity when the wrongdoer is the manager, owner, or highest ranking officer within the company. The judgment of the Court of Appeals is affirmed.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed

GARY R. WADE, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and CORNELIA A. CLARK and JEFFREY S. BIVINS, JJ., joined. HOLLY KIRBY, J., not participating.

Justin S. Gilbert, Chattanooga, Tennessee; Jonathan L. Bobbitt, Brentwood, Tennessee; and Jessica F. Salonus, Jackson, Tennessee, for the appellant, Charles Haynes.

James M. Glasgow Jr., Union City, Tennessee; Timothy R. Holton, Memphis, Tennessee; and Michael P. McGartland and Eugene E. Borchardt, Fort Worth, Texas, for the appellee, Formac Stables, Inc.

Robert D. Myers, Ryan M. Skertich, and Brandon D. Pettes, Memphis, Tennessee, for the amicus curiae, the Tennessee Defense Lawyers Association.

# OPINION

## I. Facts and Procedural History

Charles Haynes (the "Plaintiff") worked as a horse groom for Formac Stables, Inc. ("Formac"). After Formac terminated the Plaintiff's employment in June of 2010, he filed a complaint for retaliatory discharge pursuant to both the common law and the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304 (2014). When Formac responded by filing a motion to dismiss, the Plaintiff amended his complaint, alleging that on April 3, 2010, during working hours, he suffered an injury to the head when kicked by a Tennessee Walking Horse named "Bruce Pearl." The Plaintiff maintained that he asked Formac's owner for permission to leave work so that he could seek appropriate medical treatment.[1] The owner refused, informing the Plaintiff that the only treatment he would allow was for a veterinarian to seal the wound with horse sutures. According to the Plaintiff, the owner explained to him that if he did not like that option, he could "find [him]self another job." The Plaintiff's pleadings indicate that he submitted to the stitching procedure only because he feared that he would otherwise lose his job.

The Plaintiff alleged that during the three months following the incident he complained to the owner of severe headaches caused by the lack of proper medical care. On June 29, 2010, the owner terminated the Plaintiff, allegedly because of his refusal to remain silent about the illegal stitching procedure.

In response to the Plaintiff's amended complaint, Formac again moved to dismiss, arguing that the Plaintiff had failed to state a valid claim for retaliatory discharge because, according to his own allegations, he had not reported the illegal activity to anyone other than the owner. The trial court granted the motion to dismiss, and the Court of Appeals affirmed the dismissal. Haynes v. Formac Stables, Inc., No. W2013-00535-COA-R3-CV, 2013 WL 6283717, at *6 (Tenn. Ct. App. Dec. 4, 2013). We granted review to address whether an employee asserting a whistleblower claim of retaliatory discharge must report illegal activity by his employer to someone other than the person responsible, even when that person is the manager, owner, or highest ranking officer of the company. This is an issue of first impression for this Court.

## II. Standard of Review

In adjudicating a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6), a court must accept as true the factual allegations in the complaint and determine whether those allegations state a claim upon which relief may be granted. Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn. 2011). We conduct a de novo

---

[1] The name of the owner does not appear in the pleadings.

review of a dismissal pursuant to Rule 12.02(6), affording no presumption of correctness to the ruling of the trial court. Phillips v. Montgomery Cnty., 442 S.W.3d 233, 237 (Tenn. 2014).

### III. Analysis

The sole issue before us is whether the Plaintiff has stated a viable claim for retaliatory discharge when he reported the illegal stitching procedure only to Formac's owner, who was primarily responsible for the conduct.

In Tennessee, the employee–employer relationship is ordinarily governed by the employment-at-will doctrine, "a long standing rule . . . which recognizes the concomitant right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong." Stein v. Davidson Hotel Co., 945 S.W.2d 714, 716 (Tenn. 1997). In Clanton v. Cain-Sloan Co., this Court recognized an exception to the employment-at-will doctrine in the form of a common law cause of action for retaliatory discharge. 677 S.W.2d 441, 445 (Tenn. 1984). While the claim in Clanton concerned an allegation that the employer had discharged an employee for filing a workers' compensation claim, id. at 443, this Court later clarified that an employee may recover for retaliatory discharge in a variety of different contexts by establishing the following elements:

> (1) that an employment-at-will relationship existed; (2) that the employee was discharged[;] (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

Crews v. Buckman Labs. Int'l, Inc., 78 S.W.3d 852, 862 (Tenn. 2002). One of the factual scenarios that will support a common law cause of action for retaliatory discharge is when an employee is discharged for refusing to remain silent about his employer's illegal activity or unsafe practices—commonly referred to as a "whistleblower" claim. Gossett v. Tractor Supply Co., 320 S.W.3d 777, 787 (Tenn. 2010) (citing Anderson v. Standard Register Co., 857 S.W.2d 555, 556 (Tenn. 1993)).

Employees may also assert a whistleblower claim pursuant to the TPPA, which provides, in pertinent part, that "[n]o employee shall be discharged or terminated solely . . . for refusing to remain silent about[] illegal activities." Tenn. Code Ann. § 50-1-304(b). The primary difference in the statutory version of the cause of action is that it requires an

employee to show that his or her refusal to remain silent was the sole reason for the discharge, whereas a common law claimant must show only that his or her refusal to remain silent was a substantial factor motivating the discharge. Guy v. Mut. of Omaha Ins. Co., 79 S.W.3d 528, 537 (Tenn. 2002).[2]

To prevail on a whistleblower claim pursuant to the TPPA or at common law, an employee must establish that he or she reported the employer's illegal activity and that the "reporting of the illegal activity furthered a clear public policy." Gossett, 320 S.W.3d at 788.[3] Over time, our courts have attempted to clarify what an employee must do to meet the reporting requirement. In Merryman v. Central Parking System, Inc., the Court of Appeals held that an employee may report the illegal activity to an outside entity, such as a law enforcement or regulatory agency, or may report internally to company management. No. 01A01-9203-CH-00076, 1992 WL 330404, at *7 (Tenn. Ct. App. Nov. 13, 1992), abrogated on other grounds by Guy, 79 S.W.3d at 537, and Anderson, 857 S.W.2d at 556.[4] The court in Merryman concluded, however, that an employee cannot merely report the illegal activity to the person responsible for the activity. 1992 WL 330404, at *7. Because Merryman had not reported his employer's illegal conduct to anyone other than the supervisor who was responsible, the court held that he had "not become a 'whistleblower'" and, therefore, could not prevail on his retaliatory discharge claim. Id. Subsequent Court of Appeals decisions have reaffirmed the rule that employees asserting whistleblower claims may report illegal activity internally but must report to someone other than the person responsible for the activity. See, e.g., Coleman v. Humane Soc'y of Memphis, No. W2012-02687-COA-R9-CV, 2014 WL 587010, at *24-26 (Tenn. Ct. App. Feb. 14, 2014); Collins v. AmSouth Bank, 241 S.W.3d 879, 885-86 (Tenn. Ct. App. 2007), overruled on other grounds by Gossett, 320 S.W.3d at 788.

---

[2] In 2014, the General Assembly added the following provision to the TPPA: "This section abrogates and supersedes the common law with respect to any claim that could have been brought under this section." Tenn. Code Ann. § 50-1-304(g). This provision "appl[ies] to all actions accruing on or after [July 1, 2014]." Act of May 22, 2014, ch. 995, § 8, 2014-2 Tenn. Code Ann. Adv. Legis. Serv. 864, 865 (LexisNexis).

[3] Tennessee law also recognizes a cause of action for retaliatory discharge based on an employee's refusal to participate in illegal activity, which does not require the employee to show any reporting of the illegal activity. Id.

[4] There is no bright-line rule regarding the outside entities to which an employee may report. Depending upon the nature of the wrongdoing at issue, Tennessee courts have upheld claims by employees who reported to various different authorities. See, e.g., Guy, 79 S.W.3d at 531 (employee reported insurance fraud to Tennessee Department of Commerce and Insurance); Crews, 78 S.W.3d at 855 (employee reported unauthorized practice of law to Board of Law Examiners); Mason v. Seaton, 942 S.W.2d 470, 471 (Tenn. 1997) (employee reported fire code violations and other dangerous conditions to "city fire and police department").

In Emerson v. Oak Ridge Research, Inc., the Eastern Section of the Court of Appeals held that an employee had satisfied the reporting requirement by reporting an incident of sexual harassment to the supervisor who subjected her to the harassment, who was the manager of the company. 187 S.W.3d 364, 371 (Tenn. Ct. App. 2005). The court in Emerson distinguished Merryman as follows:

> In Merryman, this [c]ourt ruled that simply reporting the behavior to the offending supervisor himself instead of reporting it to company management would not qualify the plaintiff as a whistleblower. In the case at bar, however, [the] plaintiff reported to both the offending supervisor and company management when she reported to [her supervisor], as he served in both capacities. Thus, Merryman is factually distinguishable.

Id. at 371 n.1. The court also noted that Emerson had reported her supervisor's conduct to an "outside entity" by contacting a local bar association "looking for an attorney because her boss was sexually harassing her." Id. at 371 n.2.[5]

In contrast to Emerson, the Middle Section of the Court of Appeals held in Lawson v. Adams that an employee did not qualify as a whistleblower because he had reported his employer's operation of unsafe trucks only to the owner, who was responsible for the unsafe activity. 338 S.W.3d 486, 497 (Tenn. Ct. App. 2010). The Lawson opinion contains no discussion of Emerson or whether the reporting was adequate in light of the offending party being the company owner.

In this case, the Western Section of the Court of Appeals rejected the Plaintiff's reliance on Emerson, ruling as follows:

> If Emerson had created the exception to Merryman that [the Plaintiff] contends it did, the exception clearly would have been applicable to Lawson. The Lawson court declined to recognize such an exception. When a plaintiff brings a claim based on his refusal to remain silent about illegal activity, the plaintiff must establish that he made "a report to some entity other than the person or persons engaging in the allegedly illegal activities." [Lawson, 338 S.W.3d at 497 n.3 (quoting Collins, 241 S.W.3d at 885)]. [The Plaintiff's] complaint does not establish that he reported the illegal activity to anyone other than Formac's owner, who had allegedly engaged in it. We therefore

---

[5] Judge D. Michael Swiney dissented from the Emerson majority's analysis of the reporting issue, concluding that "an employee must do something more than merely complain to the alleged harasser" to qualify as a whistleblower. Id. at 382 (Swiney, J., concurring in part and dissenting in part).

affirm the trial court's dismissal of [the Plaintiff's amended] complaint for failure to state a claim.

Haynes, 2013 WL 6283717, at *6.

As our discussion of these cases demonstrates, there is a split of authority within the Court of Appeals pertaining to the reporting requirement for whistleblower claims. The Eastern Section Panel in Emerson expressly distinguished Merryman and carved out an exception for plaintiffs who report illegal activity to a single person who is both "the offending supervisor and company management." Emerson, 187 S.W.3d at 371 n.1. The Middle Section Panel in Lawson and the Western Section Panel in this case did not recognize the exception established in Emerson. Accordingly, we must decide whether to preserve the exception established in Emerson or, in the alternative, to adopt a rule that uniformly requires employees to report illegal activity to someone other than the offending party—which will necessarily be an outside entity when, as here, the offending supervisor, the sole manager, and the company owner are the same person.

The Plaintiff contends that the Court of Appeals Panels in Lawson and in this case erred by failing to recognize the ruling in Emerson that an employee may satisfy the reporting requirement by reporting illegal activity to an offending supervisor when that supervisor is also the manager, owner, or highest ranking officer in the company. The Plaintiff asserts that to deny him whistleblower status would encourage managers and owners to claim that they participated in illegal activity as a means of avoiding liability for retaliatory discharge. In addition, the Plaintiff argues that disallowing internal reporting to an owner or manager responsible for illegal conduct will require employees to report to outside authorities, which will deprive employers of the opportunity to take corrective action.

Formac emphasizes that whistleblower protection is available only to employees who report illegal conduct in a manner that advances the public interest. Gossett, 320 S.W.3d at 788 ("The employee has no cause of action [as a whistleblower] unless the employee shows that the reporting furthered some clear public interest."). Formac contends that an employee who reports only to the person responsible for the illegal conduct is acting in pursuit of a private interest, thereby failing to expose the employer's unlawful activity in furtherance of the public interest.

Formac's position is supported by the case law of courts in other jurisdictions addressing the same issue. In Fowler v. Criticare Home Health Services, Inc., the general manager of the employer instructed Fowler, the employee, to ship a package containing firearms and ammunition, and Fowler confronted the general manager about the illegality of such a shipment. 10 P.3d 8, 15 (Kan. Ct. App. 2000). Affirming a summary judgment in

favor of the employer, the Kansas Court of Appeals ruled as follows:

> [W]e are unpersuaded by Fowler's argument that [the person he confronted] was the general manager, and that Fowler understood the initial directive to have come from [the general manager's] boss, the owner of the company. There was nothing about the fact that Fowler worked for a smaller company that prevented him from reporting to law enforcement, if he felt company reporting avenues were closed to him. . . . A worker who wants to come under the protections of [the whistleblower cause of action] must seek out the intervention of a higher authority, either inside or outside of the company.

Id. at 15, aff'd, 26 P.3d 69 (Kan. 2001) (adopting the opinion of the Kansas Court of Appeals). In another analogous case, Drummond v. Land Learning Foundation, the employee confronted the owners of the employer, alleging that they had engaged in tax fraud. 358 S.W.3d 167, 169 (Mo. Ct. App. 2011). The Missouri Court of Appeals found that the employee had not reported the illegal activity in a way that qualified him as a whistleblower:

> "[T]o effectuate the clear mandate of public policy implicated in a given situation, it is axiomatic that the at-will employee report or 'blow the whistle' to the proper authorities, which, depending on the circumstances, would include the employer, 'internal whistleblowing,' and/or a third-party authority, 'external whistleblowing.'" [Faust v. Ryder Commercial Leasing & Servs., 954 S.W.2d 383, 390-91 (Mo. Ct. App. 1997).] Internal reporting to superiors of illegal actions by other employees can constitute protected activity. However, a report of wrongdoing to the wrongdoer is insufficient to invoke the whistleblowing public policy exception. Reporting to the wrongdoer does not expose the wrongdoer or his wrongdoing and, thus, does not further the accepted clear mandate of public policy. If wrongdoing occurred, the wrongdoer necessarily knew of the misconduct already because he is the one that engaged in the misconduct and is not the person likely to remedy the wrong. While a report of wrongdoing to the wrongdoer may in some instances have the intended effect of stopping future criminal activity, it does not expose wrongdoers and their past wrongdoings in such a way as to remedy a public ill. Instead, "[i]t allows wrongdoers to escape detection and avoid prosecution for past wrongdoing, while in no way affording the victims an opportunity to protect themselves from further wrongdoing." Faust, 954 S.W.2d at 391. Such is contrary to the clear mandate of public policy.

Drummond, 358 S.W.3d at 171 (citations omitted); see also Lykins v. CertainTeed Corp., 555 F. App'x 791, 794 (10th Cir. 2014) (holding that whistleblower status requires "reporting

-7-

[illicit activity] to someone higher than the wrongdoer, either inside the company, if available, or outside the company, when internal channels are unavailing"); Chipp v. Salvation Army, No. B167508, 2004 WL 729216, at \*4 (Cal. Ct. App. Apr. 6, 2004) ("[The employee] failed to show that his employment was terminated in violation of public policy because he did not show that he disclosed the alleged wrongdoing to anyone not participating in the wrongful acts. . . . [The employee] therefore did not act as a whistle blower.").

As these authorities demonstrate, the public policy underlying the whistleblower protections precludes relief for an employee who merely reports unlawful activity to the person responsible, even when that person is the manager, owner, or highest authority within the company. As we recognized in Guy,

> [U]nder both the statute and the common law, the plaintiff must assert that his or her whistleblowing activity "serves a public purpose [that] should be protected. So long as employees' actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged."

79 S.W.3d at 537 n.4. (second emphasis added) (quoting Wagner v. City of Globe, 722 P.2d 250, 257 (Ariz. 1986)). When an employee reports wrongdoing only to the wrongdoer—who is already aware of his or her own misconduct—there has been no exposure of the employer's illegal or unsafe practices. Such an employee necessarily fails to "blow the whistle" in a meaningful fashion because the employee has made no "effort[] to bring to light an illegal or unsafe practice." Collins, 241 S.W.3d at 885 (emphasis added) (citing Guy, 79 S.W.3d at 537 n.4). We acknowledge that our decision will eliminate the option of internal reporting under certain circumstances, such as when the wrongdoer is the manager, owner, or highest authority within the company, as is the case here. As other courts have observed, however, imposing liability for the discharge of a whistleblower is a narrow exception to the employment-at-will doctrine and must be limited to situations in which an employee has exposed the wrongful conduct of the employer in furtherance of the public interest, which may require reporting to an outside agency in circumstances such as these. See, e.g., Fowler, 10 P.3d at 15; Drummond, 358 S.W.3d at 169.[6]

### IV. Conclusion

Because the allegations in the Plaintiff's amended complaint establish that he did not expose Formac's illegal conduct by reporting it to anyone aside from the person responsible for the conduct, the Court of Appeals properly affirmed the dismissal of the amended

---

[6] We overrule Emerson, 187 S.W.3d at 371 & n.1, to the extent that it is inconsistent with this opinion.

complaint for failure to state a claim upon which relief may be granted.  Costs of this appeal are taxed to Charles Haynes and his surety, for which execution may issue if necessary.

_____

GARY R. WADE, JUSTICE