# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 8, 2010 Session

## LESTER MITCHELL LAWSON, III v. ANTHONY ADAMS

**Appeal from the Circuit Court for Rutherford County**
**No. 57387     Robert E. Corlew, III, Judge**

---

**No. M2009-02581-COA-R3-CV - Filed October 6, 2010**

---

Lester Mitchell Lawson, III ("Plaintiff") filed this wrongful discharge lawsuit against his former employer, Anthony Adams ("Defendant"). Plaintiff claims he was illegally discharged for refusing to remain silent about and refusing to participate in illegal activities. Plaintiff brought both common law and statutory claims. The Trial Court granted Defendant's motion for summary judgment on all claims after finding that the undisputed material facts established that Plaintiff failed to report the alleged illegal activity to an entity other than the person engaging in the claimed illegal activity. We affirm the grant of summary judgment to Defendant on Plaintiff's common law and statutory claims that he was discharged for refusing to remain silent about illegal activities. We vacate the Trial Court's grant of summary judgment on Plaintiff's common law and statutory claims that he was discharged for refusing to participate in illegal activities.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Vacated in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Jerry E. Farmer, Murfreesboro, Tennessee, for the Appellant, Lester Mitchell Lawson, III.

Wm. Kennerly Burger, Murfreesboro, Tennessee, for the Appellee, Anthony Adams.

## OPINION

## Background

This retaliatory discharge lawsuit was filed by Plaintiff in July 2008. In his complaint, Plaintiff claimed that he was unlawfully terminated on April 15, 2008 from his job with Defendant because he refused to participate in, or to remain silent about, activities of Defendant which allegedly were in violation of the law or in violation of clear public policy. According to the complaint:

> The Plaintiff became employed by Defendant on or about February of 2003.
>
> The Plaintiff remained employed with Defendant until on or about April of 2008. . . .
>
> The Plaintiff's duties involved operating trucks and heavy equipment including dump trucks, trailers, and construction equipment.
>
> The Plaintiff was expected to work under unsafe working conditions and to operate trucks and equipment which were unsafe.
>
> Plaintiff experienced several close calls, accidents, and near accidents by operating unsafe equipment at Defendant's insistence.
>
> Plaintiff complained repeatedly to Defendant about having to operate equipment that was unsafe.
>
> Plaintiff refused to participate in, or to remain silent about, activities of Defendant which were in violation of the law or clear public policy of the State of Tennessee.
>
> Defendant discharged, or constructively discharged, Plaintiff on April 15, 2008.
>
> Defendant's discharge or constructive discharge of Plaintiff was the result of Plaintiff's refusal to participate in, or

to remain silent about, activities of Defendant which were in violation of the law or clear public policy of the State of Tennessee.

This action is brought pursuant to the provisions of TCA § 50-1-304 and pursuant to the common law of retaliatory discharge. (original paragraph numbering omitted)

Plaintiff sought compensatory and punitive damages in an unspecified amount, as well as an award of reasonable attorney fees.

After answering the complaint and denying any liability to Plaintiff, Defendant filed a motion for summary judgment. According to the motion:

Concisely stated, Defendant asserts that the complaint is frivolous. Essentially, the Plaintiff contends that his opinions, as an employee, regarding the maintenance and condition of the Defendant's equipment should be superior, and controlling, over the opinions of the owner and management of the Defendant's business. As recited in the attached affidavit, no factual basis exists for a contrary conclusion . . . .

In support of his motion for summary judgment, Defendant filed his affidavit. Defendant is the owner of Adams Excavating Company. Defendant acknowledged that Plaintiff worked for him from February 2003 through the date "of his voluntary departure" in April 2008. Defendant then stated:

Mr. Lawson's duties admittedly involved operating trucks and heavy equipment, including dump trucks, trailers, and related construction equipment, all within the scope and course of his routine work activities. As Mr. Lawson's employer and supervisor, I am aware of no ". . . close calls, accidents (or near-accidents) related to Mr. Lawson's performance of his work activities." One accident in which Mr. Lawson was involved resulted from his turning a truck over by parking incorrectly on a hillside. It had nothing to do with the condition of the truck. A second minor accident involved his dumping of concrete debris, and had nothing to do with the condition of the vehicle.

At no time was the Plaintiff, Mr. Lawson, threatened or admonished from disclosure of any fact regarding his work activities (including, specifically, safety conditions pertaining to work circumstances or equipment conditions). At no time was the Plaintiff instructed or told to refuse to participate in, or remain silent about, activities of the employer which were in any violation of the laws of the State of Tennessee, the United States of America, or the clear public policies of either the state or federal government. Mr. Lawson was not terminated, although he engaged in conduct that would have justified termination. On the date of his resignation, he was late to a job site, and left an expensive piece of equipment in the parking lot. When I asked him about the situation, he cursed and threatened me, using various obscenities, and telling me that, ". . . if I would come down there, he's whip me." He left and never came back. My business, like all other construction business in Tennessee, is subject to inspections by both the Tennessee and the federal Occupational Safety and Health Administration (OSHA).

I have never been fined, sanctioned, or otherwise admonished by any city, county, state, or federal department or agency regarding any safety violations. The equipment provided to my employees is safe and adequate for the performance of all work duties. From a business perspective, it would make no sense for my business to insist on my employees' use of dangerous equipment, since the ultimate result would be more costly than any slight benefit which could result from irrational "penny-pinching" at the expense of my employees' safety. I have never had unusually high incidents of workers' compensation claims. In the minimal workers' compensation claims experienced by my business, I have never been sanctioned or admonished by the Tennessee Department of Labor for any violations of the Tennessee Workers' Compensation statute.

I am unaware of any factual basis for any claim by Mr. Lawson that:

(a) The work circumstances at our job sites (or the equipment utilized) were in any way unusually or inherently dangerous;

(b) That Mr. Lawson, or any other employee, was in any way, or at any time, sanctioned, threatened, or punished in any way in retaliation for the requirement that they "remain quiet" about any such alleged conditions.

Both factual allegations are patently false and are without factual merit. My equipment is safe, and is typical for construction equipment maintained and operated by similar construction operations in Rutherford County, Tennessee. There are no unusual maintenance issues.

I have never engaged in any activity, directly or indirectly, personally or through any agent, which would constitute a communication to Mr. Lawson (or any other employee) that they should "remain silent" about any equipment maintenance issues. Concisely stated, I simply do not know what Mr. Lawson is talking about. (original paragraph numbering omitted)

In response to Defendant's motion for summary judgment, Plaintiff filed his affidavit which states, in relevant part, as follows:

I became employed by Anthony Adams d/b/a Adams Excavation, on or about February of 2003.

My duties involved operating trucks and heavy equipment including dump trucks, trailers, and construction equipment.

My main job was to drive a 1996 Mack dump truck. I also had to pull a pentle hitch trailer with the dump truck. The dump truck had air brakes. The trailer had air brakes. Air to the trailer brakes had to be supplied from the dump truck.

The dump truck has always been hard to stop since I worked there. My employer has had the brakes worked on many times, but they never worked properly while I worked there.

About a year before I lost my job, while greasing the dump truck I discovered that the dump truck was missing bolts from out of the frame. And the ones that were present were loose. I attempted to tighten the remaining bolts, and reported the missing bolts to my employer. My employer instructed me to drive the truck with missing bolts, or just "go home." I understood this to mean I would lose my job. I followed my employer's instructions and drove the truck with missing bolts. My employer told me he would get new bolts put in the frame. Up until the last day of my employment, the missing bolts were never replaced.

About six months before I lost my job, while greasing the dump truck, I discovered that the dump truck had a crack in the frame. I reported this to my employer. He said he would get his welder on it one day. He told me to go ahead and drive the truck with the crack in the frame. I followed my employer's instructions. On the day I lost my job, the truck still had a crack in the frame.

On frequent occasions throughout my term of employment, my employer used the tactic of telling me and others "Either do it or just go home," when confronting me and other employees with unsafe or undesirable tasks.

The dump truck had one front axle and three rear axles. The two back rear axles were drive axles. Only one of them worked.

The front most rear axle was a drop axle. It could move up and down and is supposed to be used to help take the weight off of the drive axles when the truck is loaded. One of the tires on the drop axle blew out some time after I had discovered the missing frame bolts but before I had discovered the crack in the frame. I reported this to my employer and told him I did not want to drive the truck with the blown out drop axle tire. My

employer instructed me to drive the truck anyway, but to drive it slow and not to use the drop axle to help take the weight off the driving axles while the truck was loaded. Due to my employer's frequent use of the tactic of telling me and others "Either do it or just go home," I understood I would lose my job if I did not follow my employer's instructions. My employer had the blown out drop axle tire repaired shortly before I lost my job.

The dump truck was equipped with a jake brake. A jake brake uses engine compression to help the truck slow down. About three months before I lost my job, the jake brake stopped working. I reported this to my employer. My employer instructed me to drive the truck anyway, but to drive slow. I understood I would lose my job if I did not follow my employer's instructions, so I did. The jake brake was still not operational on the day I lost my job.

Most of my job involved using the dump truck to pull the pentle hitch trailer loaded with a backhoe or some other piece of heavy equipment. About three weeks before I lost my job, I noticed the brakes on the pentle hitch trailer stopped working. I was pulling the trailer, and when I looked back I noticed that the trailer wheels were locked down and smoking. The trailer brakes would not release. I reported this to my employer. My employer instructed me to disable the trailer brakes and continue my journey that day. The trailer brakes can be disabled by disconnecting the trailer from the air source on the dump truck. I told my employer I would follow his instructions on this occasion, but that he needed to get the trailer brakes fixed for me to pull the trailer again. My employer assured me that the trailer would not be needed again for a few more weeks. I understood that I would lose my job that day if I did not pull the trailer without any trailer brakes.

On the morning of the day I lost my job, I arrived at the shop at 6:30 a.m. The pentle hitch trailer, loaded with the backhoe, was hooked up to the dump truck, but the air was not connected to the trailer. I called my employer and asked him if he'd had the brakes fixed. My employer told me no, but to drive

the dump-truck trailer combination as it was, with the trailer brakes disabled. My task was to work with Harold Whitworth to use the backhoe to load the dump truck with dirt and drive the dump truck to another job site that my employer would direct me to. I protested that I did not want to drive the combination with no trailer brakes. My employer instructed me to go slow and take the back roads. My employer told me if I did not want to drive the truck as it was, I should "just go to the house." I understood that if I did not follow my employer's instructions, I would lose my job.

I drove the truck/trailer combination from the shop on Mooreland Ln. and had to stop at the stop sign at Franklin Rd. From a speed of 20 m.p.h. I needed 200 feet within which to stop. The other stops I had to make that morning were at Manson Pike, Baker Rd., Old Nashville Hwy., on a crossroad at Chicken Pike, at Nissan Dr., and at the job site. Each time I had to stop, by the time I got the truck slowed down to 20 m.p.h. I needed at least 200 more feet to stop it. I had experienced driving the dump truck without the trailer, both loaded and unloaded, with the brakes in the condition they were in that day. Unloaded I needed at least 100 feet to stop the truck from 20 m.p.h. Loaded I needed at least 150 feet to stop the truck from 20 m.p.h. On the day I lost my job, my employer called me to find out how far I had gotten in accomplishing the task. My task was to drive a dump truck with bolts missing from the frame that had gone about a year without repair, a crack in the frame that had gone about six months without repair, truck brakes that did not function properly, a jake brake that did not function at all, pulling a heavily loaded trailer with no brakes on the trailer at all. Then to haul dirt in the dump truck with inadequate brakes. My employer was cursing me because he felt I was going too slow. Basically, my employer was requiring me to operate unsafe equipment, which I felt I had to do slowly and carefully to keep my job, and my employer was rushing me to operate the unsafe equipment more speedily. I understood that if I did not follow my employer's instructions, I would lose my job. I could not bring myself to operate this unsafe equipment in a careless and speedy manner, and told my employer so. My employer's response was to "shut the f- - - up," and that if I did

-8-

not follow his instructions, he had nothing else for me to do. I understood my employment to be terminated. There was no reason for my employer to terminate my employment other than my refusal to follow his instructions to hurry up with the unsafe dump truck and trailer.

During my employment I experienced several close calls, accidents, and near accidents by operating unsafe equipment at my employer's insistence. On one such occasion, I was following my employer's instructions while dumping a load of dirt and as a result of doing what my employer instructed me to do the truck bed was too high for the amount of dirt in it and the truck overturned, injuring me. My employer paid for my medical treatment because he was not covered by workers compensation insurance at the time. On another occasion, the truck was loaded with rocks on one side and dirt on the other, so that when I dumped the load, the rocks slid out but the dirt stuck, causing the truck to overturn again. That day my employer admitted it was unsafe to drive the truck because of rain, but he made me drive it anyway.

I complained repeatedly to my employer about having to operate unsafe equipment, but my employer insisted that I continue to operate equipment that was unsafe, making it clear to me that if I refused to do so I would lose my job, due to his frequent use of the tactic of telling me and others "Either do it or just go home." There were times when other employees chose to go home, and they didn't get their jobs back.

My employer had many opportunities to repair the unsafe equipment, but other than replacing the blown out drop axle tire, he never did so during my employment.

I adjusted the brakes from time to time, but long before the last trip I made for the Defendant, there was no more adjustment left on the brakes.

The brakes on the dump truck were not adequate to control the movement of the dump truck or to stop and hold the dump truck, whether loaded or unloaded.

The service brakes on the dump truck were not adequate to stop the dump truck within a distance of 30' on dry level pavement from a speed of 20 m.p.h., whether loaded or unloaded. The same was true of the combination of the dump truck with the trailer, whether loaded or unloaded.

The parking brakes on the dump truck were not adequate to hold the dump truck on all of the grades which the dump truck was operated. They would hold it on flat ground, but I didn't always drive it on flat ground. They couldn't stop the truck within 55' from 20 m.p.h.

At my employer's insistence, I drove the loaded dump truck without using the drop axle to locations where I later observed material injury to the road surface. I believe the injury to the road surface was caused by the overloaded nature of my drive axles unassisted by the drop axle.

It is impossible to operate the dump truck/trailer combination in the condition they were in during my employment in a careful and prudent manner. Mere operation of that equipment by definition meant you had to be careless and imprudent. Because of my employer's insistence that I operate unsafe equipment in an unsafe manner as a condition of my employment, my working conditions were so intolerable that refusing to continue working in an unsafe manner was my only reasonable alternative. . . . (original paragraph numbering omitted)

The Trial Court initially denied Defendant's motion for summary judgment until adequate discovery could be undertaken. Once the parties had an adequate opportunity to conduct necessary discovery, Defendant renewed his motion for summary judgment. In his renewed motion for summary judgment, Defendant furnished Plaintiff's deposition testimony where he acknowledged that he never reported any complaints to anyone other than Defendant. Plaintiff testified:

> Q. Okay. Did you ever - before you ended up leaving there, did you ever file any kind of complaint with the Tennessee Department of Transportation or the Tennessee Department of Safety?

A.      No, sir, just complained to Anthony Adams only.

Q.      Why didn't you do as much as even an anonymous phone
        call to them if you had concerns about the safety of those
        vehicles out on the public highways?

A.      I figured he was the owner, he should - [it's] his
        responsibility to take care of it.

Q.      Well, but you're the driver and you're the one who [is]
        out on the highway attempting to stop a truck that may
        be . . . behind a car that may have a family in it. On that
        level of concern, why would you not have reported that
        to the proper authorities if you really thought it was a
        serious problem?

A.      I would just do like he told me, take my time. . . .

        In September of 2009, the Trial Court entered a Memorandum Opinion
granting Defendant's motion for summary judgment. In its Memorandum Opinion, the Trial
Court noted that there were conflicting decisions by this Court as to what is required to state
a cause of action under the common law and the Tennessee Public Protection Act, Tenn.
Code Ann. § 50-1-304. More specifically, in *Collins v. AmSouth Bank*, 241 S.W.3d 879
(Tenn. Ct. App. 2007), the Middle Section of this Court discussed the common law and
statutory causes of action for retaliatory discharge as follows:

        To prevail on a claim of common law retaliatory discharge, an
        employee must prove (1) that an at-will employment relationship
        existed between the employee and the employer, (2) that the
        employee was discharged, (3) that the employee was discharged
        for attempting to exercise a statutory or constitutional right, or
        for any other reason that violates a clear public policy, and (4)
        that such action was a substantial factor in the employer's
        decision to discharge the employee. *See Guy v. Mut. of Omaha
        Ins. Co.*, 79 S.W.3d at 535; *see also Anderson v. Standard
        Register Co.*, 857 S.W.2d 555, 558 (Tenn. 1993).

        In addition to a common-law action for retaliatory
        discharge, the Tennessee General Assembly has adopted a
        statutory cause of action under the Tennessee Public Protection

-11-

Act, commonly called the "Whistleblower Act." Tenn. Code Ann. § 50-1-304(a) provides that no employee shall be discharged solely for refusing to participate in or to remain silent about illegal activities. "Illegal activities" include state and federal criminal and civil violations, as well as violation of any regulation affecting public health, safety, and welfare. Tenn. Code Ann. § 50-1-304(c). Therefore, the primary difference between the common law and statutory claims is that, to benefit from statutory protection, an employee must demonstrate that his or her refusal was the sole reason for his or her discharge. Tenn. Code Ann. § 50-1-304(a); *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d at 535-37.

\* \* \*

Persons asserting either a statutory or common-law whistleblowing claim must prove more than that their employer violated a law or regulation. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d at 538; *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d at 531. They must prove that their efforts to bring to light an illegal or unsafe practice furthered an important public policy interest, *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d at 538 n.4; *Franklin v. Swift Transp. Co., Inc.*, 210 S.W.3d at 531, rather than simply their personal interest. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d at 538 n.4. While they need not report the suspected illegal activities directly to law or regulatory enforcement officials, they must make a report to some entity other than the person or persons who are engaging in the allegedly illegal activities. *Emerson v. Oak Ridge Research, Inc.*, 187 S.W.3d 364, 371 (Tenn. Ct. App. 2005); *Merryman v. Central Parking System, Inc.*, No. 01A01-9203-CH-00076, 1992 WL 330404, at \*7 (Tenn. Ct. App. November 13, 1992), *overruled on other grounds by Anderson v. Standard Register Co.*, 857 S.W.2d 555 (Tenn. June 28, 1993), *as recognized in Hill v. Perrigo of Tennessee*, No. M2000-02452-COA-R3-CV, 2001 WL 694479, at \*5 (Tenn. Ct. App. June 21, 2001).

*Collins*, 241 S.W.3d at 884-85.

The above-quoted discussion in *Collins* was interpreted by the Trial Court in the present case, as well as the Western Section of this Court in *Gossett v. Tractor Supply Co., Inc.*, No. M2007-02530-COA-R3-CV, 2009 WL 528924 (Tenn. Ct. App. Mar. 2, 2009)[1], as requiring a plaintiff to make a complaint to someone other than the person engaging in the illegal conduct when a plaintiff alleges a termination for refusing to participate in or refusing to remain silent about illegal activity. The Western Section of this Court in *Gossett* disagreed with the holding in *Collins* and concluded that when a plaintiff alleges that he or she was terminated for refusing to participate in illegal activity, the plaintiff does not have to prove that he or she made a complaint about the illegal conduct. *See VanCleave v. Reelfoot Bank*, No. W2008-01559-COA-R3-CV, 2009 WL 3518211 (Tenn. Ct. App. Oct. 30, 2009), *no appl. perm. appeal filed*:

> In *Gossett* [*v. Tractor Supply Co.*, No. M2007-02530-COA-R3-CV, 2009 WL 528924 (Tenn. Ct. App. Mar. 2, 2009)], we held that reporting illegal activity is not an essential element of a claim of retaliatory discharge for refusal to participate. *Gossett*, 2009 WL 528924, at *6-14. We rejected dicta in *Collins v. AmSouth Bank*, 241 S.W.3d 879, 885 (Tenn. Ct. App. 2007) to the extent that it could be interpreted to require reporting of the alleged illegal activity in a claim of retaliatory discharge for refusal to participate. *Gossett*, 2009 WL 528924, at *14.

*VanCleave*, 2009 WL 3518211, at *7 n.4.

Because the Trial Court in the present case is located in the Middle Section of this State, and because *Collins* is a reported decision[2] and *Gossett* is not, the Trial Court followed *Collins* and concluded that because Plaintiff admittedly did not report the alleged illegal activity to anyone other than Defendant, Plaintiff failed to state a claim under either the common law or the Tennessee Public Protection Act for allegedly refusing to participate in or to remain silent about illegal activity. In addition, the Trial Court concluded that Plaintiff failed to establish that his efforts "to bring to light an illegal or unsafe practice furthered an important public policy interest . . . rather than simply his personal interest."

---

[1] As will be discussed later in this Opinion, the Tennessee Supreme Court granted permission to appeal in the *Gossett* case and affirmed the judgment of the Western Section of this Court. *See Gossett v. Tractor Supply Co., Inc.*, No. M2007-02530-SC-R11-CV, — S.W.3d —, 2010 WL 3633459 (Tenn. Sept. 20, 2010).

[2] *Collins* was reported pursuant to Tenn. Ct. App. R. 11 as no request for permission to appeal to the Supreme Court was filed in that case.

-13-

Plaintiff appeals claiming the Trial Court erred when it granted Defendant's motion for summary judgment.

**Discussion**

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).
>
> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The*

-14-

*Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

> Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

On August 17, 2009, the Tennessee Supreme Court granted permission to appeal in *Gossett v. Tractor Supply Co.*, No. M2007-02530-COA-R3-CV, 2009 WL 528924 (Tenn. Ct. App. Mar. 2, 2009). As noted *supra* at note 1, the Supreme Court recently released its Opinion in *Gossett v. Tractor Supply Co., Inc.*, No. M2007-02530-SC-R11-CV, — S.W.3d —, 2010 WL 3633459 (Tenn. Sept. 20, 2010). As relevant to this appeal, in *Gossett* the Supreme Court stated:

> Tractor Supply next argues that summary judgment is warranted pursuant to *Collins* because Mr. Gossett did not report to an authority within or outside Tractor Supply that Mr. Massmann had asked him to perform an illegal activity. It is undisputed that Mr. Gossett did not report the activity, and we therefore address only whether reporting is an essential element of Mr. Gossett's claim.
>
> The elements of a common law retaliatory discharge action can apply to many distinct factual scenarios. *See Chism*, 762 S.W.2d at 556. We have stated that it can arise when an employee is discharged either for refusing to remain silent about an illegal activity or for refusing to participate in an illegal activity. *Anderson*, 857 S.W.2d at 556; *see Chism*, 762 S.W.2d at 556. When an employee is discharged for refusing to remain silent about an illegal activity, the employee must show that his or her reporting of the illegal activity furthered a clear public

-15-

policy. *See Guy*, 79 S.W.3d at 537 & n.4. Without this showing, the claimant cannot establish the third element of the common law retaliatory discharge action, which requires proof of the clear public policy that the employer violated by the discharge. *See Crews*, 78 S.W.3d at 862.

We have never held that an employee alleging retaliatory discharge for refusing to participate in an illegal activity must report the illegality to show that the employer violated a clear public policy. *Cf. Reynolds*, 887 S.W.2d 822 (upholding a verdict in favor of truckers claiming retaliatory discharge for refusing to drive uninspected trucks in violation of federal and state laws without considering whether the truckers reported their employer's illegal activity). Tractor Supply asserts that pursuant to *Collins*, 241 S.W.3d at 885, reporting the allegedly illegal activity is essential to showing the third element in a case for common law retaliatory discharge based on refusing to participate in an illegal activity.

In *Collins*, the employee "alleged that she was fired solely because she refused to go along with [her supervisor's] illegal instructions." *Id*. at 882. The Court of Appeals affirmed the summary judgment on the employee's statutory and common law retaliatory discharge claims and held that "[p]ersons asserting either a statutory or common law whistleblowing claim must prove" that "their employer violated a law or regulation" and that their efforts to report "an illegal or unsafe practice furthered an important public policy interest." *Id*. at 885 (citing *Guy*, 79 S.W.3d at 538 n.4). It found summary judgment proper because the employee failed to demonstrate that her supervisor's request was illegal and because she "failed to present any proof that she reported or attempted to report [her supervisor's] request to other bank officials or regulators." *Id*. at 885-86.

Although we agree with the statement in *Collins* concerning the requirements of whistleblowing claims, *Collins* involved a plaintiff who refused to participate in an allegedly illegal activity, not a plaintiff who refused to remain silent about it. In a "whistleblowing" case, in which a failure to remain silent is alleged, the nature of the claim asserts that silence was

-16-

broken. The employee has no cause of action unless the employee shows that the reporting furthered some clear public interest. A case alleging a refusal to participate does not require that silence be broken for a claim to exist, and reporting therefore is not integral to the claim. For the purposes of the common law retaliatory discharge cause of action, we decline to hold that an employee's refusal to violate the law never furthers a clear public policy unless the employee reports the employer's attempted violation. The Court of Appeals therefore incorrectly applied the reporting element to the employee's action for common law retaliatory discharge for refusing to participate in an illegal activity.

Our decision not to add a reporting requirement will not expand the use of the common law retaliatory discharge cause of action or cause the retaliatory discharge exception to swallow the employment-at-will doctrine that Tennessee courts have long recognized. *Chism*, 762 S.W.2d at 555-56. Claimants alleging common law retaliatory discharge must identify "'an unambiguous constitutional, statutory or regulatory provision'" as evidence of the public policy that the employee's discharge violates. *Guy*, 79 S.W.3d at 535 (quoting *Chism*, 762 S.W.2d at 556); *Crews*, 78 S.W.3d at 862. This element sufficiently limits the retaliatory discharge cause of action to only those cases in which a discharge violates public policy. *Chism*, 762 S.W.2d at 557. *Collins*, for example, properly affirmed summary judgment because the employee alleging retaliatory discharge failed to identify an unambiguous constitutional, statutory, or regulatory provision evincing a clear public policy that the employee furthered by refusing to follow her supervisor's instruction. 241 S.W.3d at 885-86 & n.4.

*Gossett*, 2010 WL 3633459, at *9-10.

Returning to the present case, as to Plaintiff's common law and statutory claim that he was terminated for refusing to remain silent about illegal activities, Plaintiff readily admitted that he never reported the alleged illegal activity to anyone other than Defendant, who was the person engaging in the claimed illegal activity. Because Plaintiff never reported the claimed illegal activity to anyone other than Defendant, we affirm the grant of summary

-17-

judgment on Plaintiff's common law and statutory claims that he was terminated for refusing to remain silent about illegal activities.[3]

As set forth by the Supreme Court in *Gossett*, there is no reporting requirement for common law and statutory claims of wrongful discharge based upon refusal to participate in illegal activities. Here, the Trial Court granted Defendant summary judgment on Plaintiff's common law and statutory claim that he refused to participate in illegal activities. That summary judgment grant was premised upon Plaintiff's failing to meet a reporting requirement. As there is no reporting requirement as to an employee's refusal to participate in illegal activities claim, the judgment of the Trial Court in this respect is vacated.

Even though Plaintiff need not show he reported the alleged illegal activity when asserting a common law claim for wrongful discharge based on refusing to participate in illegal activity, he is, nevertheless, required to "identify 'an unambiguous constitutional, statutory or regulatory provision' as evidence of the public policy that the employee's discharge violates. *Guy*, 79 S.W.3d at 535 (quoting *Chism*, 762 S.W.2d at 556); *Crews*, 78 S.W.3d at 862." *Gossett*, 2010 WL 3633459, at *10. When the Trial Court granted Defendant's motion for summary judgment, it stated that Plaintiff failed to establish that he made efforts "to bring to light an illegal or unsafe practice [that] furthered an important public policy interest . . . rather than simply his personal interest." In short, the Trial Court concluded that Plaintiff was furthering his own interest and not any public policy that was evidenced by an unambiguous constitutional, statutory or regulatory provision. We disagree.

In his response to Defendant's motion for summary judgment, Plaintiff claimed Defendant violated Tenn. Code Ann. §§ 55-9-204 & 205 (addressing brake requirements for motor vehicles and setting forth many requirements, including that all brakes be maintained in good working order and be properly adjusted, violations of which are a Class C misdemeanor), Tenn. Code Ann. § 55-7-101 (addressing operation of a motor vehicle that is injurious to the road's surface or foundation), and Tenn. Comp. R. & Regs. § 1340-6-1-.30 implemented by the Department of Safety, Division of Commercial Vehicle Enforcement, which provides that:

---

[3] In *Gossett* the Supreme Court noted that the *Collins* Court affirmed summary judgment on the refusal to remain silent claim because the plaintiff failed to report her supervisor's alleged illegal activity to "other" bank officials or regulators. *Gossett*, 2010 WL 3633459, at *9. Immediately thereafter, the Supreme Court stated that it agreed "with the statement in *Collins* concerning the requirements of whistleblowing claims . . . ." *Id*. at *10. We take this as the Supreme Court's approval of *Collins'* requirement that when a plaintiff brings a claim premised upon a refusal to remain silent about illegal activity, that plaintiff must establish that he made "a report to some entity other than the person or persons who are engaging in the allegedly illegal activities." *Collins*, 241 S.W.3d at 885.

All motor vehicles shall be operated in accordance with the requirements of the state laws and no driver or operator thereof shall operate the same in any other than a careful and prudent manner, nor at any greater speed than is lawful, reasonable or proper, having due regard to the traffic and use of the way by others, or so as to endanger the life and limb of any person, nor shall any person operate a motor vehicle, until such operator shall have complied in all respects with the requirements of [Title] 59, Chapter 7, of the Tenn. Code Annotated.

The parties are in sharp disagreement over whether Defendant violated any of the statutes or the regulation that Plaintiff alleges were violated. Based on the affidavits filed in this case, there clearly is a genuine factual issue as to whether these statutes or the regulation were violated. The question we must address is, assuming Plaintiff's factual allegations are true, which we must at this summary judgment stage of the proceedings, whether Plaintiff's discharge violated public policy that was evidenced by a constitutional, statutory or regulatory provision. We conclude that the statutes and regulations Plaintiff claims were violated establish, at a minimum, public policy that motor vehicles have properly working brakes. The fact that a public policy is involved is made more apparent by the fact that the General Assembly has made violations of Tenn. Code Ann. §§ 55-9-204 & 205 Class C misdemeanors.

Taking Plaintiff's factual allegations as true, which we must, Defendant's alleged statutory and regulatory violations resulted in Plaintiff driving loaded dump trucks and trailers on public roads with significantly defective brakes. This put not only Plaintiff at risk, but also everyone else who was using the public roads being traveled by Plaintiff while he was driving this allegedly defective equipment. As such, we disagree with the Trial Court's conclusion that Plaintiff was protecting only his personal interest. Taking Plaintiff's factual allegations as true at this motion for summary judgment stage, we conclude that Plaintiff sufficiently established that his discharge violated public policy as evidenced by an unambiguous statutory or regulatory provision. The Trial Court's judgment to the contrary is vacated.[4]

---

[4] We express no opinion on whether Defendant actually violated any statutes or regulations. That decision will be for the trier of fact.

-19-

## Conclusion

The judgment of the Trial Court is affirmed in part and vacated in part. This cause is remanded to the Circuit Court for Rutherford County for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed to the Appellee, Anthony Adams, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE