# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 16, 2013 Session

## CHARLES HAYNES v. FORMAC STABLES, INC.

**Direct Appeal from the Circuit Court for Obion County**
**No. CC-10-CV-204      William B. Acree, Judge**

---

**No. W2013-00535-COA-R3-CV - Filed December 4, 2013**

---

Plaintiff filed retaliatory discharge suit against his former employer, Defendant. According to his complaint, Defendant's owner engaged in illegal activity. Plaintiff complained to Defendant's owner of the illegal activity and was subsequently terminated. The trial court dismissed Plaintiff's complaint because Plaintiff did not report the illegal activity to any person or entity other than the Defendant's owner, who was a participant in the illegal activity. Plaintiff contends that where a company's owner is a participant in illegal activity, reporting the illegal activity solely to the owner should not preclude a retaliatory discharge claim premised on refusal to remain silent. We do not agree and therefore affirm the trial court's dismissal of Plaintiff's complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Justin S. Gilbert, Jonathan L. Bobbitt and Jessica Farris Salomus, Jackson, Tennessee, for the appellant, Charles Haynes.

James M. Glasgow, Jr., Memphis, Tennessee, and Michael Patrick McGartland and Eugene Emil Borchardt, Fort Worth, Texas, for the appellee, Formac Stables, Inc.

## OPINION

### I. BACKGROUND AND PROCEDURAL HISTORY

Charles Haynes was employed by Formac Stables, Inc. ("Formac") as a horse

groomer. Mr. Haynes's employment with Formac ended in June 2010. Mr. Haynes subsequently filed a complaint alleging retaliatory discharge for refusal to remain silent ("whistleblowing") under the common law of Tennessee and the Tennessee Public Protection Act ("TPPA"). Tenn Code Ann. § 50-1-304 (2008 & Supp. 2013). Formac responded, filing a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Tennessee Rule of Civil Procedure 12.02(6). Mr. Haynes then filed an amended complaint that alleged the following facts:

Defendant employed Plaintiff as a horse groomer.

On or about April 3, 2010, Plaintiff was kicked in the head by a horse named "Bruce Pearl," a stud Tennessee Walker.

Plaintiff asked Defendant's owner that he be allowed to obtain appropriate medical treatment for the injury.

Defendant's owner refused the request.

Instead, Defendant's owner informed Plaintiff that the only treatment available to Plaintiff would be for a veterinarian to stitch the Plaintiff's bleeding head with horse stitches.

Defendant informed Plaintiff that if he did not like the treatment option by a veterinarian, he could "find your own way back to Tennessee and find yourself another job."

Having no other option, and faced with losing his job otherwise, Plaintiff underwent the inappropriate medical treatment by the veterinarian. But he did not remain silent about what he, in good faith, believed to be illegal medical treatment. See, e.g., Tenn. Code Ann. 63-6-201 (stating requirements to practice medicine upon human beings); see also, General Rules Governing Veterinarians, at 1730-01-13(10)(stating that unprofessional conduct includes human treatment). Plaintiff did protest this to Defendant's owner and to the veterinarian.

Plaintiff experienced headaches in April, May, and June. Still incensed about the indignity and illegality of being treated by an animal doctor, he continued his protests, including explaining how the headaches werer [sic] due to not being seen by an appropriate medical examiner. There was no one in a higher

-2-

position within Defendant's company than Defendant's owner.

On or about June 29, 2010, Defendant's owner abruptly terminated Plaintiff's employment. The true, substantial motivating reason for the termination was Plaintiff's continued opposition and/or refusal to remain silent about what he reasonably perceived to be illegal activity–treatment by an animal doctor for a human injury.

Formac responded by filing an amended 12.02(6) motion to dismiss, contending that the amended complaint failed to state a claim upon which relief can be granted.

The trial court granted Formac's motion and dismissed Mr. Haynes's amended complaint. The trial court stated that in order to maintain a whistleblower retaliatory discharge cause of action under Tennessee common law and TPPA, the plaintiff must report the alleged illegal activity to some entity other than those persons who were engaged in the illegal activity. *See Collins v. AmSouth Bank*, 241 S.W.3d 879, 885 (Tenn. Ct. App. 2007). Because Mr. Haynes's complaint stated that he only reported the illegal activity to Formac's owner, who was a participant in the illegal activity, the trial court concluded that Mr. Haynes's complaint was insufficient to maintain his cause of action.

Mr. Haynes filed a motion to alter or amend judgment, contending that although generally a plaintiff must report illegal activity to someone other than those persons who participated in the illegal activity, there is an exception where the offending party is the owner or manager of the defendant. Mr. Haynes contended that the 2005 Tennessee Court of Appeals case *Emerson v. Oak Ridge Research, Inc.*, 187 S.W.3d 364 (Tenn. Ct. App. 2005), created such an exception. The trial court declined to recognize an exception and denied Mr. Haynes's motion. Mr. Haynes subsequently filed a notice of appeal to this Court.

## II. ISSUE PRESENTED

The sole issue in this case, as we perceive it, is whether a plaintiff states a cause of action for whistleblower retaliatory discharge where he or she only reported the illegal activity to the owner of the company, who was the one engaging in the allegedly illegal activity.

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Tennessee Rule of Civil Procedure 12.02(6) tests only the legal sufficiency of the complaint itself, not the strength of the plaintiff's proof. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn.

1994). When considering such a motion, the trial court's task is to determine whether the allegations of the complaint, if considered true, are sufficient to constitute a cause of action as a matter of law. *Id.* The trial court should only grant a motion to dismiss if it appears that the plaintiff cannot establish any facts in support of the claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). We will review the trial court's grant of a motion to dismiss *de novo*, with no presumption of correctness. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

## IV. Discussion

Tennessee has long recognized the doctrine of employment-at-will, which establishes the right of either an employer or an employee to terminate an employment relationship at any time, for good cause, bad cause, or for no cause, without committing a legal wrong. *Stein v. Davidson Hotel, Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). The doctrine of employment-at-will was applied without exception in Tennessee for many years until 1984, when a common law cause of action for retaliatory discharge was first recognized by the Tennessee Supreme Court in *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 445 (Tenn. 1984). Later, the adoption of TPPA created a statutory cause of action for retaliatory discharge. Tenn. Code Ann. § 50-1-304.

Tennessee has retained the separate common law cause of action for retaliatory discharge since adopting the statutory cause of action under TPPA, though the two are very similar. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002). In order to prevail on a claim of common law retaliatory discharge in Tennessee, the employee must show that (1) an employment-at-will relationship existed between the employee and the employer, (2) that the employee was discharged, (3) that the employee was discharged for attempting to exercise a statutory right or for any other reason that violates a clear public policy, and (4) that such action was a substantial factor in the employer's decision to discharge the employee. *Lawson v. Adams*, 338 S.W.3d 486, 493 (Tenn. Ct. App. 2010). Though the requirements for statutory protection are similar, the primary difference for employees seeking protection under TPPA is that they must establish that their refusal to participate or remain silent was the sole reason for his or her discharge.[1] *Guy*, 79 S.W.3d at 537.

As is alluded to above, common law and TPPA retaliatory discharge claims usually arise in one of two factual scenarios: cases where the employee is terminated for refusing

---

[1]In pertinent part, TPPA provides that, "No employee shall be discharged or terminated *solely* for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b) (emphasis added).

to participate in an illegal activity and cases where the employee is terminated for refusing to remain silent about an illegal activity (whistleblower cases). *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777, 787-88 (Tenn. 2010). Depending on the facts of the case, there may be a requirement that the employee report the suspected illegal activity in order to satisfy the third prong of retaliatory discharge, which requires that the employee be discharged for attempting to exercise a statutory right or for another reason that violates public policy. *See Lawson*, 338 S.W.3d at 493. In cases where the employee is terminated for refusing to participate in an illegal activity, the Tennessee Supreme Court has held there is no requirement that the employee report the illegal activity. *Gossett*, 320 S.W.3d at 788. However, in whistleblower cases, the employee must show that he or she reported the illegal activity. *Id.* Not only must the employee show that he or she reported the illegal activity in whistleblower cases, the employee must show that the reporting served a public purpose, rather than a private one. *Id.*; *Guy*, 79 S.W.3d at 538 n.4.

There is no dispute that whistleblower cases require the employee to report the illegal activity. There are, however, questions regarding to whom the report of illegal activity must be made in order to serve a public purpose. The court in *Collins v. AmSouth Bank*, 241 S.W.3d 879 (Tenn. Ct. App. 2007), which the trial court relied on to dismiss Mr. Haynes's complaint, stated that although the plaintiff is not required to report the illegal activity directly to law or regulatory enforcement officials, "they must make a report to some entity other than the person or persons who are engaging in the illegal activities." *Collins*, 241 S.W.3d at 885. Tennessee courts have acknowledged that as the general reporting requirement for whistleblower plaintiffs since it was first introduced in *Merryman v. Central Parking System, Inc.*, No. 01A01-9203-CH-00076, 1992 WL 330404 (Tenn. Ct. App. Nov. 13, 1992). *See Lawson v. Adams*, 338 S.W.3d 486, 497 (Tenn. Ct. App. 2010); *Gossett v. Tractor Supply Co., Inc.*, No. M2007-02530-COA-R3-CV, 2009 WL 528924, at *11 (Tenn. Ct. App. Mar. 2, 2009); *Emerson v. Oak Ridge Research, Inc.*, 187 S.W.3d 364, 371 (Tenn. Ct App. 2005).

Though he acknowledges the general rule from *Merryman*, Mr. Haynes contends that there is an exception. He argues that where the person engaging in illegal activity is the owner of the company, reporting the illegal activity to that person should satisfy the reporting requirement for whistleblower retaliatory discharge because there is no higher-ranking person to report to internally. Mr. Haynes relies on *Emerson* as creating the exception. To fully explain the possible exception, we first examine the general rule of *Merryman*.

The plaintiff in *Merryman* was hired by the defendant, Central Parking, to be a co-pilot of its corporate aircraft. *Merryman*, 1992 WL 330404, at *1. The plaintiff's immediate supervisor was the chief pilot, with whom the plaintiff would be flying. *Id.* After several years of flying together, the plaintiff noticed changes in his supervisor's attention span,

concentration, and balance. *Id.* The plaintiff approached his supervisor to discuss the danger of the supervisor's flying. *Id.* Two days later, the supervisor terminated the plaintiff. *Id.* The plaintiff filed a lawsuit for retaliatory discharge. The *Merryman* court had to decide whether the plaintiff's action in reporting the unsafe practices to his supervisor, the one engaging in the conduct, fulfilled the reporting requirement of whistleblower cases. The court held that it did not. *Id.* at 7. The court pointed out that the plaintiff never tried to involve company management or reach out to any regulatory agency, rather his conversations with his supervisor were private in nature. *Id.* The *Merryman* court concluded the reporting requirements for a retaliatory discharge claim clearly required greater action than was taken by the plaintiff. *Id.*

In 2005, the court addressed a similar fact situation in *Emerson v. Oak Ridge Research, Inc.,* 187 S.W.3d 364 (Tenn. Ct App. 2005). The plaintiff in *Emerson* sued her former employer for retaliatory discharge. *Id.* at 367. The complaint alleged that her supervisor had sexually harassed her and created a hostile working environment. *Id.* In *Emerson*, however, the plaintiff's supervisor was also the owner of the defendant company. *Id.* In response to the supervisor's unwelcome advances, the plaintiff contacted the Knoxville Bar Association and hired an attorney, who sent a letter on her behalf to the supervisor complaining about his conduct. *Id.* Subsequently, the supervisor terminated the plaintiff. *Id.* The defendant in *Emerson* relied on *Merryman* to argue that simply reporting illegal activity to the offending supervisor was insufficient to qualify one as a whistleblower. *Id.* at 371. The court distinguished *Merryman*, though the precise distinction is unclear. In a footnote at the beginning of its *Merryman* discussion, the *Emerson* court pointed out a factual distinction between the cases, stating that:

> In *Merryman*, this Court ruled that simply reporting the behavior to the offending supervisor himself instead of reporting it to company management would not qualify the plaintiff as a whistleblower. In the case at bar, however, plaintiff reported to both the offending supervisor and company management when she reported to [her supervisor], as he served in both capacities. Thus, *Merryman* is factually distinguishable.

*Id.* at n.1 (internal citations omitted). However, the court went on to say that the rule from *Merryman* might actually support the plaintiff's position because it rejected the idea that "an employee's actions in reporting illegal activities to a person within the employment setting, instead of an outside entity, are merely private or proprietary, and thus do not promote public safety and welfare." *Id.* (quoting *Merryman*, 1992 WL 330404, at *7). The *Emerson* court then noted in a second footnote that the plaintiff had contacted an outside entity about her supervisor's conduct by calling the Knoxville Bar Association and telling them she needed a lawyer because her boss was sexually harassing her. *Id.* at n.2. The *Emerson* court

concluded its case was factually distinguishable from *Merryman*, however it did not clarify whether that was because it created an exception to the whistleblower reporting requirements where the offending supervisor and company management are the same person, or because the *Emerson* plaintiff reported the harassment to an outside entity.

In 2010, the Court of Appeals had a chance to address whether *Emerson* created the exception in *Lawson v. Adams*, 338 S.W.3d 486 (Tenn. Ct. App. 2010). The facts in *Lawson* were similar to those in *Emerson*. In *Lawson*, the defendant was the plaintiff's employer and allegedly forced the plaintiff to work in unsafe conditions despite the plaintiff's repeated protests. *Id.* at 489-92. Eventually the defendant terminated the plaintiff's employment. *Id.* at 491. The plaintiff alleged that he was terminated in response to his repeated complaints about the unsafe conditions. *Id.* 492. The plaintiff admitted that his complaints were made only to the defendant, but contended that his report of the unsafe conditions still should have been protected. *Id.* The *Lawson* court did not agree, granting summary judgment to the defendant. *Id.* at 497. The court stated,

> [A]s to the Plaintiff's common law and statutory claim that he was terminated for refusing the remain silent about illegal activities, Plaintiff readily admitted that he never reported the alleged illegal activity to anyone other than Defendant, who was the person engaging in the claimed illegal activity. Because Plaintiff never reported the claimed illegal activity to anyone other than Defendant, we affirm the grant of summary judgment on Plaintiff's common law and statutory claims that he was terminated for refusing to remain silent about illegal activities.

*Id.*

If *Emerson* had created the exception to *Merryman* that Mr. Haynes contends it did, the exception clearly would have been applicable to *Lawson*. The *Lawson* court declined to recognize such an exception. When a plaintiff brings a claim based on his refusal to remain silent about illegal activity, the plaintiff must establish that he made "a report to some entity other than the person or persons engaging in the allegedly illegal activities." *Id.* (quoting *Collins v. AmSouth Bank*, 241 S.W.2d 879 (Tenn. Ct. App. 2007). Mr. Haynes's complaint does not establish that he reported the illegal activity to anyone other than Formac's owner, who had allegedly engaged in it. We therefore affirm the trial court's dismissal of Mr. Haynes's complaint for failure to state a claim.

## V. CONCLUSION

In light of the foregoing, we affirm the trial court's dismissal of Mr. Haynes's

complaint.  The costs of this appeal are assessed to the appellant, Charles Haynes, and his surety.

                                        _____
                                        DAVID R. FARMER, JUDGE